PEOPLE *ex rel.* TUCKER *v.* ENNIS, Commissioner of Fire Department.

(*City Court of Brooklyn, General Term.* November 26, 1889.)

MUNICIPAL CORPORATIONS—REMOVAL OF FIREMEN—TELEGRAPH OPERATORS.

     A telegraph operator of the Brooklyn fire department is a member of the "force for extinguishing fires," and not a clerk, within Laws N. Y. 1880, c. 377, § 7, (City Charter of Brooklyn,) providing that the commissioner may remove clerks under certain conditions, but that no person on the force for extinguishing fires shall be removed without cause, and then only after a public trial by the head of the department.

On application for *certiorari.*

William Tucker, a telegraph operator of the fire department in the city of Brooklyn, was dismissed, without trial, by John Ennis, the commissioner of the fire deparment, and brings *certiorari* to review the proceedings.

Argued before CLEMENT, C. J., and VAN WYCK and OSBORNE, JJ.

*E. F. O'Dwyer*, for relator. *Almet F. Jenks*, for respondent.

CLEMENT, C. J. This matter comes before us by writ of *certiorari*, and the respondent, who is the commissioner of the fire department of this city, admits in his return that the relator, William Tucker, was, on or about July 30, 1878, appointed a fireman in the department; that on the 17th day of September, 1878, he was promoted to the office of bell-ringer; and that on or about July 9, 1880, he was again promoted, to the office of telegraph operator; and, further, that on the 27th day of February, 1886, he was dismissed from the department, as such telegraph operator, without a trial,—and the sole question we have to decide is whether the commissioner had power, by virtue of chapter 377 of the Laws of 1880, to remove him without a trial, or was he protected by section 14, tit. 13, Laws 1873.

Section 14, tit. 13, of the Charter of 1873 provides that the commissioner shall have power, on conviction of a member of the fire department for certain offenses therein mentioned, to punish the member by reprimand, or by withholding his pay for a period not exceeding 10 days, or by dismissal. The court of appeals have decided that under this section a member could not be convicted until charges had been preferred, and a trial had thereon. The cases of *People* v. *Commissioners*, 106 N. Y. 64, 12 N. E. Rep. 641, and of *People* v. *Commissioners*, 103 N. Y. 370, 8 N. E. Rep. 730, are directly in point. It is claimed by the counsel for the city that said section 14 was repealed by chapter 377, Laws 1880, and in the latter act is found this provision: "Sec. 7. The officer or officers at the head of any department may appoint and remove his or their clerks and assistants and other subordinates, and fix their salaries: provided, however, that, on and after the expiration of thirty days from the time when a new officer or officers shall have been appointed as such head of department, he or they may remove clerks or assistants only upon filing in writing the reasons for any removal with the city clerk, which reasons shall not be questioned in any other place; except that foremen, inspectors, and laborers temporarily employed under the department of city works may be removed at any time, at the pleasure of the head of such department. No person employed on the police force, or on the force for extinguishing fires, shall be removed without cause, and then only after a public trial by the head of his department, and after having been found guilty of misconduct or neglect of duty, or having been adjudged incapable of performing his duty.

The evidence on such trial shall be taken in full, and kept as a public record." The contention that a telegraph operator in the fire department is not protected from removal without a trial is expressly upheld in the *Case of Crafts*, 28 Hun, 495. The decision in that case was put on the ground that the words "force for extinguishing fires," in section 7 of the law of 1880, did not include telegraph operators, because the charter of the city defines the phrase "police force," (Laws 1873, c. 863, tit. 11, §§ 6, 7,) and such definition does not include superintendent, operators and assistant operators of the telegraph; and that, following the rule of *noscitur a sociis,* the legislature did not intend to include the same officers or men by the expression "force for extinguishing fires." The opinion was based on the charter as it then existed, but since that decision the charter has been amended. By chapter 246, Laws 1887, telegraph operators were included in the police force; and the same provision is re-enacted in the Revised Charter, tit. 11, § 4, (chapter 583, Laws 1888.) To now apply the rule laid down in the *Crafts Case,* telegraph operators would be members of the fire force. The relator can fairly argue that the legislature intended to correct the mistake in the charter whereby telegraph operators were protected in the fire department, and not in the police force. There is also another reason why we cannot follow the law as laid down in the *Case of Crafts.* The court seemed to treat the last clause of section 7 of the law of 1880 as making a change, as to removals, in the prior law. The court of appeals have since held that it did not change the law, but applied the old law to the new state of things. *People* v. *Commissioners,* 106 N. Y. 64, 12 N. E. Rep. 641. Under the Charter of 1873, tit. 13, there was a department of fire and buildings, consisting of a president and two commissioners, and by the law of 1880 two separate departments were constituted,—one of fire, and the other of buildings,—each with a single head; and by section 7, before quoted, the head or any department of the city government may appoint and remove his clerk, assistants, and other subordinates, but with the proviso at the end that no person employed on the police force, or force for extinguishing fires, shall be removed without a trial. We think that the provision "force for extinguishing fires" meant fire department, and that any one who was a member of the department was entitled to a trial after the passage of the law of 1880, in the same manner as before the passage of the act. Referring now to the charter of 1873, we find that by section 6 of title 13 the common council were required to provide fire telegraphs, and by section 14 the commissioners of the fire department were required to make regulations under which the officers and men should wear uniforms and badges, and by section 9 the commissioners should have power to appoint as many officers, clerks, firemen, engineers, drivers, inspectors, and bell-ringers as should be deemed necessary by the common council, and the same should be under the control of the commissioners at all times, and perform such duties as should be imposed upon them. Telegraph operators are as necessary in the fire department as men to light fires of the steam fire-engines; and the operator who sounds the alarm may accomplish more in the extinction of a fire than the engineer who starts the engine for the purpose of throwing water. There is no reason in protecting the bell-ringer of the olden time and in leaving out the telegraph operator, for their duties are alike, viz., to sound the alarm; and the charter should not be so construed, unless the letter of the law so requires. The spirit of the charter is to protect all members of the fire department from removal, except upon conviction of misconduct, after a fair trial, just so long as they are able physically to perform their duties. Such a construction is not to be narrowed by any technicality, but should be favored on broad principles. The charter provides that officers, engineers, firemen, drivers, and bell-ringers are members of the fire department. It is admitted in the return that Tucker was appointed to the office of telegraph operator, and it is evident that, under such appointment, he was subject to the control of the commissioners, and could be com-

pelled to wear a badge and uniform.   The expression "telegraph operator" is not used in section 9 of title 13; but as there was necessity for operators, because fire telegraphs were provided for in the same title, we think that they were included in the word "officers," and this construction is borne out by two facts—*First*, by the return it appears that the telegraph operators in the fire department were paid a higher salary than firemen; and, *second*, in the police department now, by the charter, vacancies in the telegraph bureau are required to be filled from the other members of the force.   Whatever the effect of the passage of the law of 1880,—whether it repealed the prior law or not,—it is certain that a telegraph operator is not a clerk, assistant, or other subordinate, performing duties clerical in their nature, and is a member of the force for extinguishing fires.   The proceedings of the commissioner must be reversed and annulled, with $50 costs and disbursements.

VAN WYCK and OSBORNE, JJ., concur.